F. Paul NASO and Anna Clarke Naso, co-partners, doing business under the firm name of Osan Supply Company, Plaintiffs,

v.

NATIONAL UNION FIRE INSURANCE COMPANY, Leipziger Trspt. U. Rck.-Vag, Svea Feuer-Vers. Ges, Alpina Vers. Akt. Ges, N.V. Allg. V.M. "Providentia"; Hartje Muller & Co.; The Indemnity Marine Assurance Company; Colonia Kolnische V.A.G.; Carl Bolken Sohne; and United States Lines Company, Defendants.

United States District Court
S. D. New York.
Nov. 19, 1957.

.612

Samuel M. Sprafkin, New York City, for plaintiffs.

Haight, Gardner, Poor & Havens, New York City, Francis V. Elias, New York City, of counsel, for defendants Leipziger Allgemaine Transport-und Ruckversicherungs-A.G. et al., appearing specially and solely for purpose of this motion.

LEVET, District Judge.

The defendants Leipziger Allgemaine Transport-und Ruckversicherungs-A.G.; Svea Feuerversicherungs-Aktiengesellschaft (sued herein as Svea Feuer-Vers. Ges.); Alpina Versicherungs-Aktiengesellschaft; N.V. Allgemeene Verzekering-Maatschappij "Providentia"; "Colonia" Kolnische Versicherungs-Aktien-

gesellschaft, Koln; Hartje Muller & Co., and Carl Bolken Sohn (hereinafter for clarity referred to collectively as German underwriters) have moved for an order to set aside service of process on them.

The plaintiffs, who maintain a place of business in New York City, are co-partners, trading as Osan Supply Company, and are engaged in dealing at wholesale in frozen fish and sea food, importing such products from abroad.

On or about December 15, 1954, the plaintiffs purchased a large quantity of frozen fish from Chr. Wollmeyer GMBN (hereinafter referred to as Wollmeyer), a processor and shipper of frozen fish in Bremerhaven, Germany. On or about that day, this fish was delivered to the "American Merchant" for delivery to the plaintiffs in New York via the Port of New York or the Port of Baltimore. In accordance with plaintiffs' instructions prior to this shipment, the German Underwriters, through one A. Atermann, an insurance broker, issued their Certificate of Insurance No. 146445, bearing date December 16, 1954, (1) certifying insurance coverage against all risks of physical loss or damage with respect to the shipment of fish which was valued at $53,428.20, via the "American Merchant," from Bremerhaven, Germany, direct to New York or indirectly via Baltimore, from shipper's [Wollmeyer] warehouse to plaintiffs' warehouse in New York, including thirty days storage after arrival at destination, and (2) undertaking to pay to the order of the bearer of the certificate the amount of loss due with respect thereof on production of the certificate of insurance and bills of lading duly endorsed. It is further stated in the certificate that:

"This Certificate represents and takes the place of the Policy, and conveys all the rights of the Original Policy Holder (for the purpose of collecting any loss or claims) as fully as if the property was covered by a Special Policy, direct to the Holder of this Certificate, and free from any liability for unpaid premiums."

And:

"In the event of damage occurring during the voyage, no claim for Average will be paid under this Certificate, unless notice of same has been given to Carl F. Ewig, 44 Whitehall Street, New York 5, N.Y. (USA) * * *."

The "American Merchant" arrived in Baltimore on or about January 6, 1955. The shipment of fish, which was inspected on board, with representatives of the German Underwriters present, was damaged by what is known in the industry as "freezer burn." This condition is brought about by improper keeping of the refrigeration, such as a fluctuation in temperature, resulting in dehydration and discoloration.

On January 7, 1955, formal claims letters were forwarded to defendant United States Lines Company (hereinafter referred to as United States Lines) and to Carl F. Ewig, apparently a New York representative of the German Underwriters, located at 44 Whitehall Street, New York City. At Ewig's request, plaintiffs delivered to him the original bill of lading, the original insurance certificate, the consular invoice, with other papers. Subsequently, on February 4, 1955, Ewig in effect authorized the sale of the fish at 16 cents a pond, FOB Baltimore, to minimize the loss. Ewig's letters are headed:

"Carl F. Ewig
"The Port of Bremen
"New York Representative
"44 Whitehall St.
"New York 4, N.Y."

On March 21, 1955, Ewig dispatched a letter to the plaintiffs, bearing the same heading, in which he stated that the Underwriters requested him to advise the plaintiffs that under the terms of the policy the Underwriters were not liable. Plaintiffs then negotiated further with Ewig, but no settlement resulted, and this action was instituted in the Supreme Court of the State of New York, County of New York. Jurisdiction over the German Underwriters was purportedly ob-

tained pursuant to Section 59–a of the New York Insurance Law McKinney's Consol.Laws, c. 28. After institution of the action in the Supreme Court of the State of New York, County of New York, the defendant United States Line on a removal petition had it transferred to this court.

On July 23, 1957, the German Underwriters moved to set aside the service of process as to them because the summons was sent to them in care of Carl F. Ewig in New York, which each claimed not to be its respective place of business. Judge Edward J. Dimock of this court granted their motion on the ground that the notice was not sent to their last known principal place of business. Thereafter, plaintiffs re-served such defendants by again serving the Superintendent of Insurance and mailing, via registered mail, additional copies of the summons and complaint addressed to each of them in care of A. Atermann at Bremen, Germany, the broker whose name appears on the certificate of insurance upon which this action was founded. The address in Germany to which process was mailed was given by Ewig during a deposition taken under oath. He stated that his correspondence was specifically with the Association of Bremen Underwriters and with one Captain F. Mellert, whose address is Boebsennebengebaeude, Bremen, Germany. Ewig testified further that he maintained his association with the Bremen Underwriters since 1951 or 1952, and that claims received by him with respect to the certificates issued by these Underwriters would average twenty-five to fifty a year; that he received the claims from the insured; that the insured deposited with him a survey fee; that he designated a surveyor in his own discretion; that he secured the surveyor's report and sent it over to the Underwriters, keeping a copy for his file and paying the surveyor. Sometimes, the surveyor is Ewig's employee and usually the first survey is made by such employee unless there is a major damage. Ewig then signs a survey report and sends it to Germany. He

may have a suggestion from the claimant as to how much to pay and he passes it on for instructions.

Now the German Underwriters have moved for the second time to set aside service of process on the ground that the copies of the summons and complaint were not served upon them by mailing to their last known principal place of business and that the acts performed by Ewig within the State of New York were not sufficient to constitute a transaction of business within the statute. They do not state in any of their papers what their respective places of business are. Each of the certificates issued by the Underwriters is headed with the name of A. Atermann, Assekuranz-Makler, Bremen, and the instant insurance certificate was issued by them as joint venturers. The plaintiffs say they know of no other address than that of A. Atermann.

The transaction in question involving this certificate was one of a number of similar transactions in which other certificates were issued to the plaintiffs. In at least one communication, dated February 8, 1955, addressed to the plaintiffs, Ewig designated himself "As Agent for A. Atermann, Bremen." Atermann affected and issued the insurance for and on behalf of the defendant Underwriters and his signature appears on the face of each certificate. Dealings of the plaintiffs were with Ewig. Ewig's check paid losses.

Section 59–a, subd. 2(a) of the New York Insurance Law is as follows:

"Any of the following acts in this state, effected by mail or otherwise, by an unauthorized foreign or alien insurer: (1) the issuance or delivery of contracts of insurance to residents of this state or to corporations authorized to do business therein, (2) the solicitation of applications for such contracts, (3) the collection of premiums, membership fees, assessments or other considerations for such contracts, or (4) any other transaction of business, is equivalent to and shall constitute an appointment by such insurer of the su-

perintendent and his successor in office, to be its true and lawful attorney, upon whom may be served all lawful process in any action, suit, or proceeding instituted by or on behalf of an insured or beneficiary arising out of any such contract of insurance, and any such act shall be signification of its agreement that such service of process is of the same legal force and validity as personal service of process in this state upon such insurer."

Subsection 2(b) of Section 59–a is in part as follows:

"Such service of process upon any such insurer in any such action or proceeding in any court of competent jurisdiction of this state, may be made by serving the superintendent or any deputy superintendent with two copies thereof and the payment to him of a fee of two dollars. The superintendent shall forward a copy of such process by registered mail to the defendant at its last known principal place of business, and shall keep a record of all process so served upon him. Such service of process is sufficient, provided notice of such service and a copy of the process are sent within ten days thereafter by or on behalf of the plaintiff to the defendant at its last known principal place of business by registered mail with return receipt requested. * * *"

■ Consequently, the *first* issue is whether or not the defendant Underwriters have, by acts mentioned in subdivision 2(a) of Section 59–a, constituted the superintendent of insurance as their attorney upon whom process may be served in an action arising out of such a contract of insurance, and, *secondly*, whether or not the plaintiffs have complied with subdivision 2(b) of Section 59–a as to service of the defendant Underwriters at their "last known principal place of business."

Here, the plaintiffs knew no other address than those of A. Atermann and

Carl F. Ewig. Judge Dimock has already held that the mailing of the process to Ewig is inadequate.

It appears to this court that the issuance of the policy which eventually came to the plaintiffs, who are residents and doing business in the city and state of New York, the recognition of the plaintiffs as the owners of the policy by the defendants through Ewig, the express policy provision requiring that notice of loss be given to Ewig in New York as a condition precedent to liability and the negotiations undertaken by Ewig on behalf of the German Underwriters, constitutes sufficient warrant for a conclusion that the defendants have acted in such a way as to come within the purview of Section 59–a of the New York Insurance Law.

The next question is whether or not the forwarding of the process to A. Atermann at Boebsennebengebaeude, Bremen, Germany, is sufficient compliance with Section 59–a, subd. 2(b) of the New York Insurance Law.

A. Atermann's affidavit submitted in support of this motion states that he is an insurance broker with an office in Bremen, Germany; that he acted as broker for Wollmeyer in obtaining the insurance certificate in suit; that he prepared the certificate of insurance, submitted it for execution to the insurance companies and received a percentage of the premium as his brokerage fee. Mr. Atermann further states that he is not an officer, employee or agent of any of the participating insurance companies; that he is not authorized by any of them to issue a certificate or policy on their behalf, and that under no circumstances could his office be considered a principal place of business of any of these insurance companies.

In their affidavit submitted in opposition to this motion, plaintiffs argue that the insurance certificate in suit is headed with the name of A. Atermann, that the German Underwriters are joint venturers under the certificate, and that as such their only principal place of business is in care of A. Atermann. In my opinion, this argument is insufficient to rebut Atermann's sworn statement that he is merely an insurance broker without authority to accept process on behalf of the Underwriters. There is nothing to indicate that under German law an insurance broker has any greater authority in this respect than does a broker in New York.

Thus, it does not appear that there is proof that the office of Atermann is the principal place of business of the respective defendants. Certainly, the office of a broker or intermediary (Makler) does not become the principal place of business of any of the defendants without further activity of the principal.

Under these circumstances it is clear that the plaintiffs have failed to comply with the requirements of Section 59–a, subd. 2(b) of the New York Insurance Law and that the German Underwriters are, therefore, entitled to an order setting aside service of process as to them.

Settle order on notice.